Wachtler, J.
This is a proceeding to review a determination by the Commissioner of Social Services, denying requested authorization for medical assistance for sexual conversion surgery. The record indicates that petitioner, Denise R., is a 42-year-old genetic male who has considered himself a woman trapped in a man’s body since he was 10 years old, which is as far back as he can remember. Approximately 18 years ago he abandoned all traces of his male identity and began to live and work in the guise of a female. Petitioner *281 dresses and acts like a woman and has had a relatively stable work history, being employed as a salesperson in a women’s dress shop.
The evidence adduced at the administrative hearing shows that in July, 1970, petitioner was first seen at Coney Island Hospital where he had been referred for evaluation of estrogen therapy and possible sexual reassignment surgery. A series of medical tests disclosed that hormonally he was a normal adult male. He was also examined by a staff psychiatrist, Dr. Ettinger, who reported that although the petitioner had the psychomotor behavior, voice and manner of a woman, there was no formal disturbance of thinking, nor suicidal inclination. Dr. Ettinger concluded that petitioner was suffering from a severe psychopathology and strongly recommended that petitioner not be encouraged or misled into thinking that the operation could be performed at Coney Island Hospital.
Prior to female sex conversion surgery, which may cost anywhere from $2,000 to $15,000, a male patient receives hormonal therapy to assist in the development of female characteristics. Since no procedure for discontinuance is known, hormonal therapy is commenced only after there has been a medical decision that surgery will definitely take place. As noted in the record, continuation of hormonal treatment without the prospect of an operation raises the danger of cancer and the possibility of severe psychological reaction.
On Dr. Ettinger’s referral petitioner next approached New York Hospital in his search for an institution to perform the operation. However, the doctor who ran the gender identity committee had left the city and the hospital no longer performed that type of surgery. In January, 1971, after several other attempts to obtain the surgery, Dr. Shagan, Chief of Endocrinology and Metabolism at Coney Island Hospital, began administering hormones to the petitioner. This treatment was initiated despite the lack of a definite commitment to perform the surgery and was commenced some 13 days before the petitioner had been referred to the Downstate Medical Center. Shortly thereafter, this institution refused to accept the petitioner because its program had been terminated due to lack of funds. Nevertheless, petitioner continued to receive hormonal therapy and apparently this treatment is presently being administered.
In November, 1972, Dr. Shagan requested the Department of Social Services to provide financial support so that the *282 surgery could be performed. This request was made pursuant to subdivision 2 of section 365-a of the Social Services Law, which provides, inter alia, that eligible persons* are entitled to medical assistance which is "necessary to prevent, diagnose, correct or cure conditions in the person that cause acute suffering, endanger life, result in illness or infirmity, interfere with his capacity for normal activity, or threaten some significant handicap.” This request was disapproved by the City Department of Social Services on a medical basis. The petitioner demanded and received a fair hearing to review this denial. The State Department of Social Services affirmed the denial, concluding that petitioner had failed to show by satisfactory evidence that medical assistance was warranted. The State commissioner utilized the wording of the Ettinger report which indicated that there was no disturbance in thinking, nor suicidal thinking.
Subsequently the instant proceeding was instituted seeking review of the administrative determination. Special Term denied the petition but the Appellate Division reversed on the law with one Justice dissenting. The position taken by the petitioner and the Appellate Division majority is that the commissioner’s denial was arbitrary and capricious since the agency offered no independent medical evidence and never examined the petitioner. We cannot agree and would reverse.
Although we believe that it would have been desirable for the respondent agency to have conducted its own medical evaluation of the petitioner, that alone does not render the agency’s determination arbitrary as a matter of law. The commissioner could properly consider the medical evidence offered at the fair hearing as a basis for his decision. That evidence which included the initial diagnosis by Dr. Ettinger, indicated that there was no disturbance in thinking or suicidal inclination. In addition, Dr. Ettinger strongly cautioned against suggesting that the operation was possible at Coney Island Hospital. The other medical testimony offered was that of Dr. Shagan. While he felt the operation was a matter of life and death, it must be remembered that he apparently disregarded the admonition not to encourage the petitioner and also initiated the potentially dangerous hormone therapy prior to a clear medical decision to operate. Indeed, this hormonal therapy may have assisted not only in the develop *283 ment of female characteristics but in an exaggeration of the petitioner’s "psychopathic” personality. These questionable actions might well have persuaded the commissioner to discount Dr. Shagan’s testimony and to rely on the diagnosis of Dr. Ettinger.
In any event, the court cannot assume the role of either social agency or legislative body. Where an administrator adopts one of several conflicting opinions, it is not the province of the court to substitute its judgment unless the agency’s determination is unreasonable or without a basis in law (see Matter of Talamo v Murphy, 38 NY2d 637; Matter of Willcox v Stern, 18 NY2d 195, 203). In the circumstances before us, we see no reason to overturn the determination of the commissioner.
Accordingly, the order of the Appellate Division should be reversed, the commissioner’s determination confirmed and the petition dismissed.

 The petitioner’s eligibility under this section is not challenged by the appellants.